[Civ. No. 14799. First Dist., Div. Two. Nov. 8, 1951.]

F. LLOYD GRANDI, Appellant, v. D. D. WATSON, as Real Estate Commissioner et al., Respondents.

Gardiner & Riede for Appellant.

Edmund G. Brown, Attorney General, and Richard H. Perry, Deputy Attorney General, for Respondents.

NOURSE, P. J. — Petitioner and appellant, F. Lloyd Grandi, on October 15, 1948, brought an action in the Superior Court of San Francisco against R. F. Davis, Acting Real Estate Commissioner, asking for a writ of mandate ordering and directing Davis to cancel and annul an order of September 21, 1948, made by him as Acting Real Estate Commissioner suspending petitioner's real estate license for 90 days based on alleged violations of the Business and Professions Code, section 10176, subsections (a), (g) and (i). It was stipulated before the trial court that D. D. Watson, now commissioner, may also be considered as respondent.

Section 10176 of the code provides: "The commissioner may, upon his own motion, and shall upon the verified complaint in writing of any person, investigate the actions of any person engaged in the business or acting in the capacity of a real estate licensee within this State, and he may temporarily suspend or permanently revoke a real estate license at any time where the licensee within the immediately preceding three years, while a real estate licensee, in performing or attempting to perform any of the acts within the scope of this chapter has been guilty of any of the following: (a) Making any substantial misrepresentation. (g) The claiming or

taking by a licensee of any secret or undisclosed amount of compensation, commission or profit or the failure of a licensee to reveal to the employer of such licensee the full amount of such licensee's compensation . . . under any agreement authorizing or employing such licensee to sell, buy or exchange real estate for compensation or commission prior to or coincident with the signing of an agreement, evidencing the meeting of the minds of the contracting parties, regardless of the form of such agreement, whether evidenced by documents in an escrow or by any other or different procedure. (i) Any other conduct, whether of the same or a different character than specified in this section, which constitutes fraud or dishonest dealing.''

The case was submitted to the trial court upon the testimony and exhibits taken before a Deputy Real Estate Commissioner and Hearing Officer together with briefs and short testimony before the court by the Acting Real Estate Commissioner and one other witness. The trial court made findings upholding the decision of the Real Estate Commissioner and gave judgment denying the petition for writ of mandate. Motion for a new trial was denied and petitioner appeals from the judgment. Appellant's main contention is that there was no evidence to sustain the findings and judgment of the trial court.

This action arises out of the sale of a lot in Marin County by Charles R. Turner through the Marvelous Marin Realty Company, owned by appellant Grandi. McGrath, whose license was also suspended for 90 days, acted as salesman for Turner in the sale of the lot. In May, 1947, Turner purchased this lot through the realty company for $1,750, $600 down and $40 monthly payments. In November, before he had finished paying for the lot, Turner talked with McGrath, expressed a desire to sell if he could make something on it. He was informed that those lots were selling for around $2,200-$2,250. There is a slight conflict in the testimony as to the price at which McGrath said he would list it but both parties agree that there was originally a listing of the property at the ordinary commission basis of 10 per cent for either $2,200 or $2,250. It was a verbal listing; Turner signed no contract with them. In January an offer was made of $2,100 which McGrath communicated to Turner. There was some talk of splitting the commission of $210 but Turner refused the offer stating he wanted $2,000 net. Appellant states that at that time the records of the company were changed to a net listing of $2,000 which was noted on the back of the card containing

the listing. From that time on it was handled as a net listing for $2,000.

In February another salesman in Grandi's office had a prospect interested in the Turner lot and, according to McGrath's testimony, Grandi told McGrath to telephone Turner and inquire whether the lot was still available for $2,000. At this point there is a conflict in the testimony which is important in view of appellant's position that the sale was made on a net listing basis and consequently it was not necessary to divulge the selling price.

McGrath testified: "I told him [Turner] that I thought we might have a possibility of selling it at that time. Q. Did he ask you how much you were selling it for? A. No, he did not. Q. Did you tell him you were selling it for $2,200? A. I didn't tell him any price. Q. Why not? A. It was a net listing. In case of that we don't do it." McGrath then testified he reported to Grandi that the property was still available at $2,000 net. On cross-examination Turner testified concerning this same telephone conversation. "He told me he had an offer on the property, and I asked him how much. He said $2,200, the amount it was listed for. I said, 'You listed it for $2,250.' That is when the conversation I have repeatedly described took place. Q. Isn't it true that in that conversation he said they had an offer on the property, no price but he wanted to confirm the net listing of $2,000 to you? You deny that? A. I do deny that, because all I know that I had listed my property for $2,250 and that I was supposed to get $2,025 back on it . . . it couldn't have been a net listing, as I have understood it since then, or it wouldn't have been necessary to have the conversation about how much commission they were going to get."

The trial court found that Turner had never authorized, expressly or otherwise, the sale of the property on a net listing basis, that Grandi was at all times in possession of full knowledge of the actions of McGrath and concluded that Grandi and McGrath were guilty of violations of section 10176, subsections (a), (g) and (i), Business and Professions Code.

 Appellant contends that the findings are not supported by the evidence, that the evidence conclusively demonstrates that there was a net listing and in addition that Grandi knew nothing about the transaction until after it was completed. As for the net listing it is evident in reading the record that Turner intended in stating he would take $2,000 net that that was the least he would sell for, it was quite

evident that he wanted the company to sell the lot for the best price they could obtain for him and there is substantial evidence to uphold the finding of the trial court that Turner never intended it as a "net listing" in the sense in which McGrath interpreted it.

As to the contention of appellant in his brief on appeal that he had no knowledge of the transaction until after its completion and therefore should not be held liable for the wrongful acts of his salesman or employee under section 10179, Business and Professions Code, and that there was no evidence to sustain the trial court on the finding that at all times Grandi was in possession of full knowledge of the action of McGrath the record discloses:

1. Grandi testified on cross-examination that in November, 1947, McGrath told him Mr. Turner had come in and listed the lot at the same price as the other lots they had there on a 10 per cent commission basis.

2. On January 26, after having been told by McGrath that Turner was getting very anxious to sell, Grandi wrote to Turner offering to take back the lot, return Turner's equity in the property and cancel the transaction, which offer was ignored by Turner.

3. In January McGrath informed Grandi of the Graham offer for the lot and at that time told him that Mr. Turner was then asking $2,000 net.

4. Some time in January Grandi testified he revised the asking prices on the lots of the subdivision raising the price of the Turner lot to $2,950, knowing at the time it was a net sale listing for $2,000. Mr. Turner was not informed of the revision on the sale price of the lot.

5. In February Grandi requested McGrath to telephone Turner to learn if the property were still for sale at $2,000.

6. On February 24, 1948, Grandi wrote to Turner enclosing a release to be signed regarding the sale of the property, setting forth the balance due from Turner on the lot which would be deducted from the $2,000, the amount he stated Turner was to receive from the sale. No mention was made of the price for which the lot was sold.

The foregoing is substantial evidence to refute the contention of appellant that the record is devoid of any showing of participation or knowledge by the appellant of anything relating to the transaction with Turner until after the transaction was closed. However under section 10179, Business and Professions Code, upon which appellant relies, it is neces-

sary that the employer had "guilty knowledge" of the violation on the part of his real estate salesman or employee before his license can be revoked or suspended. It is true Grandi testified to the effect that McGrath told him the property was to be sold on the basis of a $2,000 net listing and he accepted it as such. However there is some contradiction in his testimony. On direct examination he was asked: "Was there anything that Mr. McGrath told you, or anyone in your office, that at any time led you to believe that this was a commission—a sale, or a listing for sale for commission? A. No, it was a net listing so far as I knew, and so far as our records show. Q. Was there anything in any of the records that came to your attention as the broker, or any records of the salesmen, any entries they made, that would give you any reason to believe that this was other than a net listing sale of $2,000? A. No, we only have the listing card for that type of thing, unless it is an exclusive. . . ." Yet the original listing on a commission basis was put on the card, the net listing at $2,000 on the back. Mr. Grandi was bound to know, if he consulted the card at all, that it was originally listed on a commission basis. If he had so testified we would be constrained to reverse the judgment because, without any guilty knowledge of any misdeed of the agent, we would be justified in assuming, on the face of the card alone, that there had been a change in the listing by mutual consent of the owner and the agent. But he testified on cross-examination that McGrath had informed him when Turner first wished to sell that the sale was to be made on a commission basis, and later told him that Turner had changed his position and was willing to sell for $2,000 net which directly contradicted his testimony that at no time did he consider it other than a net listing. This was sufficient to show that he did have knowledge of the double listing. Whether he had knowledge that the change was made without the consent of the owner is the determining factor as to whether he had "guilty knowledge" under the terms of the statute. His testimony having been so inconsistent and unsatisfactory the trial court was justified in making the finding against him.

There is substantial evidence to sustain all the findings of the trial court and the conclusion that Grandi was guilty of a violation of section 10176, (a), (g), and (i) of the Business and Professions Code.

Judgment affirmed.

Goodell, J., concurred.

DOOLING, J.—I concur. Without regard to the question of guilty knowledge discussed in the main opinion I am satisfied that the evidence sufficiently shows a violation of section 10176(g), Business and Professions Code, by appellant himself. That section makes a cause for discipline "the failure of a licensee to reveal to the employer of such licensee the full amount of such licensee's compensation, commission or profit under any agreement authorizing or employing such licensee to sell . . . real estate for compensation or commission. . . ." Even if appellant honestly believed that Turner had orally authorized the net listing of his property at $2,000 he must have known as an experienced realtor that Turner was not legally bound by a mere oral authorization. (Civ. Code, § 1624, subd. 5.) That he knew there was no binding agreement to sell for $2,000 net is made clear by his asking McGrath to telephone Turner to ascertain if he was still willing to take that amount.

His duty of disclosure of the true selling price under those circumstances is clear on fundamental principles of agency. (See note in 53 A.L.R. 136 et seq., "Duty of broker to inform principal of enhanced value of property.") Knowing that he had no enforceable net agreement with Turner he was bound to disclose to Turner that he was making a $950 profit on the sale before procuring Turner's release for $2,000.

No agent should put his own interests above those of his principal which is clearly what appellant deliberately did in this case.

A petition for a rehearing was denied December 7, 1951, and appellant's petition for a hearing by the Supreme Court was denied January 3, 1952. Carter, J., voted for a hearing.